

FILED by ___ D.C.
ELECTRONIC

**Jan 13 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-23279-Civ-Altonaga/Turnoff

TRACFONE WIRELESS, INC.

               Plaintiff,

vs.

SOL WIRELESS GROUP, INC.,
CARLOS PINO, JORGE ROMERO,

               Defendants.
_____/

## TRACFONE'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff TracFone Wireless, Inc. ("TracFone"), pursuant to Federal Rule of Civil Procedure 65(a) and S.D. Fla. Local Rule 7.1(A)(1), files this memorandum of law in support of its Motion for Preliminary Injunction and Statement of Facts ("Motion")[1] requesting that the Court enjoin Defendants Sol Wireless Group, Inc. ("Sol Wireless"), Carlos Pino, and Jorge Romero (collectively "Defendants") from continuing to engage in the unlawful unlocking of TracFone/Nokia prepaid phones and in the sale of such unlocked phones during the pendency of this case.

---

[1] Terms defined in the Motion shall be used in the same manner and have the same meaning in this Memorandum of Law.

## INTRODUCTION

On December 21, 2005, TracFone filed the Complaint in this action ("Complaint"), seeking damages and injunctive relief as a result of, *inter alia*, Defendants' violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Florida Anti-Dilution Statute, § 495.151, Fla. Stat., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, *et seq.*, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, and for other relief, all of which is more particularly set forth in the Complaint.  As explained in detail in the Complaint and in the Motion, Defendants have engaged in an unlawful practice of unlocking TracFone/Nokia phones, and then selling those unlocked phones to the public as new. Defendants' misconduct has caused, and continues to cause, substantial irreparable harm to TracFone and the public.  The Lanham Act, the Florida Anti-Dilution Statute, the FDUTPA, and the DMCA each provide an independent ground for granting a preliminary injunction prohibiting the Defendants from continuing their unlawful conduct.  For the reasons set forth below, the interests of justice require that the Defendants be immediately stopped from any further such misconduct until this case is concluded and a final permanent injunction can be entered by the Court.

## ARGUMENT

### I.    EACH OF THE FOUR LAWS RELIED ON BY TRACFONE PROVIDES AN INDEPENDENT BASIS FOR PRELIMINARY INJUNCTIVE RELIEF

TracFone asserts violations by Defendants of four separate laws, each of which independently provides for entry of a preliminary injunction as requested in the Motion.

Counts one and two of the Complaint demonstrate that Defendants have violated the Lanham Act, specifically 15 U.S.C. sections 1114 and 1125(a).  Pursuant to 15 U.S.C. § 1116(a),

this Court is vested with the power to enter a preliminary injunction against Defendants for those violations of the Lanham Act.  *See* 15 U.S.C. § 1116(a) (Courts "shall have power to grant injunctions[] according to the principles of equity and upon such terms as the court may deem reasonable.").[2]

Count three of the Complaint sets forth Defendants' violation of the Florida Anti-Dilution Statute, § 495.151, Fla. Stat., which also provides for injunctive relief.  The source of the Court's authority to grant TracFone's request for a preliminary injunction under this statute is contained within § 495.151 itself, which states:

> Every person, association, or union of workers adopting and using a mark, trade name, label or form of advertisement may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, trade name, label or form of advertisement if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name, label or form of advertisement of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.

---

[2] 15 U.S.C. § 1116(a) states in full:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.  Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.  Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

*Id.*; *see, e.g., Laboratorios Roldan, C. Por A. v. Tex. Int'l, Inc.*, 902 F. Supp. 1555, 1569-71 (S.D. Fla. 1995) (granting preliminary injunction based on, *inter alia*, defendants' violation of § 495.151).

Defendants' violation of the FDUTPA, specifically § 501.204, Fla. Stat, as set forth in count four of the Complaint, also entitles TracFone to injunctive relief:

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

§ 501.211(1), Fla. Stat.; *see, e.g., Laboratorios Roldan*, 902 F. Supp. at 1569-71 (granting preliminary injunction based on, *inter alia*, defendants' violation of § 501.204).

Finally, Counts five and six of TracFone's Complaint demonstrate Defendants' violations of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)(1) and 1201(a)(2).  The DMCA provides that the Court:

> [M]ay grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation, but in no event shall impose a prior restraint on free speech or the press protected under the 1st amendment to the Constitution.

17 U.S.C. § 1203(b)(1).

## II.    ALL FOUR ELEMENTS OF THE PRELIMINARY INJUNCTION STANDARD ARE SATISFIED IN THIS CASE

"To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor."  *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).  "Instead, it must determine whether the evidence establishes:  (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the

plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Id.* (quotation omitted); *see also BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005); *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297 (11th Cir. 2001). Furthermore, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co.*, 51 F.3d at 985 (quotation omitted).

TracFone meets all the elements necessary for a preliminary injunction with respect to Defendants' violation of the Lanham Act, the Florida Anti-Dilution Statute, the FDUTPA, and the DMCA. Therefore, each statute provides an independent ground on which this Court should grant TracFone's Motion.

**A.    THERE IS A SUBSTANTIAL LIKELIHOOD THAT TRACFONE WILL PREVAIL ON EVERY CLAIM IN THE COMPLAINT**

      **1.    The Lanham Act.**

Defendants have violated and continue to violate two provisions of the Lanham Act—15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

      **a.    Defendants' violations of 15 U.S.C. § 1114.**

Section 32(1) of the Lanham Act protects against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

A plaintiff demonstrates a violation of § 1114(1) if it can show, "first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989); *see also Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997); *Gen. Conference Corp. of Seventh-Day Adventists v. Perez*, 97 F. Supp. 2d 1154, 1157 (S.D. Fla. 2000). Defendants' unlawful conduct easily satisfies both requisites of a § 1114(1) violation.

TracFone Has a Valid Trademark

TracFone has used, and continues to use, trademarks in commerce, including the TRACFONE mark. In particular, TracFone owns and has so used at least two registered trademarks. One registered trademark is Incontestable United States Trademark Registration No. 2,114,692, issued November 18, 1997, for TRACFONE, used in connection with prepaid airtime cellular telephones and cellular telephone accessories, in international category 9; for cellphone telephone services and providing monitoring and control services for use in connection with prepaid airtime cellular phones and debit cards, in international category 38; and wholesale distributorship featuring the same, in international category 42, issued on November 18, 1997 and based on dates of first use in June, 1996.

Another registered trademark is Incontestable United States Trademark Registration No. 2,761,017, issued September 9, 2003, for TRACFONE and Design, used in connection with prepaid air time cellular telephones and cellular telephone accessories in international category 9; for on-line retail store services featuring the same, in category 35; and for cellular telephone services and monitoring and control services for use in conjunction with prepaid airtime cellular

phones and debit cards, in category 38, issued on September 9, 2003 and based on dates of first use in December, 2001.

True and correct copies of the certificates of registration issued by the United States Patent and Trademark Office for TracFone's trademarks are attached as Exhibits "A" and "B" respectively.

Pursuant to section 7(b) of the Lanham Act, a certificate of registration of a trademark issued by the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate."   15 U.S.C. § 1057(b). Furthermore, if a registered trademark is incontestable, its validity, ownership, and exclusive right of use are conclusive and irrebuttable, subject only to certain limited affirmative defenses which are not applicable here. 15 U.S.C. § 1115(b).

Because TracFone has been issued Certificates of Registration by the United States Patent and Trademark Office for the trademarks at issue and its trademarks are incontestable, TracFone has conclusively demonstrated as a matter of law that it has a valid trademark. *See Dieter*, 880 F.2d at 326.


Defendants' Use of TracFone's Trademarks are Likely to Cause Confusion

Defendants' misconduct also easy satisfies the second part of the test for violation of § 1114(1); their misuse of TracFone's trademarks are likely to cause confusion.  The following seven factors are considered in determining whether there exists a likelihood of confusion:

(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion.

*Dieter*, 880 F.2d at 326; *see also Frehling Enters., Inc.*, 192 F.3d at 1335.  Of these, type of mark and actual confusion are considered the most important.  *Id.*

"In reviewing the evidence, there are no set rules as to how much evidence of confusion is needed; rather a district court 'must take into consideration the circumstances surrounding each particular case.'"  *Longhorn Steaks, Inc.*, 122 F.3d at 1382 (quoting *Dieter*, 880 F.2d at 326 n.3).  Furthermore, "[i]n order to establish a likelihood of confusion, all factors do not have to be resolved in favor of the Plaintiff."  *Perez*, 97 F. Supp. 2d at 1157.

Moreover, "likelihood of confusion is not limited to confusion at the initial point of sale; it can be at any point in the chain of distribution or ownership, including post-sale confusion of third parties who later encounter the product."  *Laboratorios Roldan, C. Por A. v. Tex. Int'l, Inc.*, 902 F. Supp. 1555, 1566-67 (S.D. Fla. 1995).  Applying each of the seven factors to Defendants' misconduct clearly demonstrates the likelihood of confusion:

1.  *Type of Mark*

Courts determine the level of protection to be afforded a mark based upon the mark's strength: the stronger the mark, the greater the scope of protection.  *Frehling Enters., Inc.*, 192 F.3d at 1335.  Marks can be grouped into one of four categories:  "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary."  *Id.*  Arbitrary marks are the strongest of the four categories. *Id.* at 1335-36.  An arbitrary mark is one that bears no relationship to the product.  *Id.* at 1335. For example, "'Sun Bank' is arbitrary when applied to banking services."  *Id.*

The use of the mark by third parties is also an important factor in determining a mark's strength.  *Id.* at 1336; *see also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975

(11th Cir. 1983) (recognizing that "the extent of third-party use of the mark" is an important factor in determining the strength of the mark). "The less that third parties use the mark, the stronger it is, and the more protection it deserves." *Frehling Enters., Inc.*, 192 F.3d at 1336.

The final factor to consider in determining the strength of a mark is whether it is "incontestable." *Id.* If the United States Patent and Trademark Office has declared a mark as "incontestable," the strength of the mark is enhanced. *Id.*

Applying each of the foregoing factors to the "TracFone" mark leads to the conclusion that it is a decidedly strong mark that is due considerable protection. First, the "TracFone" trademark is an arbitrary mark. Just as the "Sun Bank" mark is arbitrary as applied to banking services, *id.*, the "TracFone" mark is arbitrary as applied to prepaid phone service. The "Sun" in "Sun Bank" has no relation whatsoever to the banking services provided by the bank. Similarly, the "Trac" in "TracFone" has no relation whatsoever to the prepaid wireless phone services provided by TracFone. The "TracFone" mark, therefore, is an arbitrary mark and is entitled to substantial protection. *Id.* at 1335-36.

Second, only TracFone and its affiliates use the TracFone mark. (Savedge Decl. ¶ 26) That no third-parties use the TracFone mark is another indication of the strength of the mark. *Frehling Enters., Inc.*, 192 F.3d at 1336. Finally, as demonstrated by the attached Certificates of Registration, TracFone's mark is "incontestable" and, therefore, is entitled to yet another layer of protection. In sum, all the relevant factors demonstrate that the TracFone mark is extremely strong and should be afforded considerable protection.

2. *Similarity of the Marks*

In determining the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters., Inc.*, 192 F.3d at 1337.

In this case, the marks on the TracFone/Nokia prepaid phones that Defendants purchase, and those that they resell to their customers are identical. After removing the TracFone Prepaid Software from the TracFone/Nokia prepaid phones, Defendants resell the altered phones as new. The altered phones, which no longer conform to TracFone's specifications and no longer operate on the TracFone network, still contain the actual TracFone mark on the handset. In fact, the exterior of the phones is not modified by Defendants at all, so altered phones appear identical to legitimate TracFone/Nokia prepaid phones. Anyone purchasing an altered phone from Defendants would have absolutely no way of telling by looking at the phone that it was no longer an operational TracFone/Nokia prepaid phone. Only when an unsuspecting consumer attempts to use the TracFone/Nokia prepaid phone for its intended purpose of accessing the TracFone prepaid wireless system would the consumer learn that the phone no longer operates as designed. Defendants' concurrent use of the TracFone mark on essentially the same product is a strong indication that there is a substantial likelihood of confusion among consumers. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248-49 (11th Cir. 2002).

3. *Similarity of the Products the Marks Represent*

"This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling Enters., Inc.*, 192 F.3d at

1338.  "The greater the similarity between the products and services, the greater the likelihood of confusion."  *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985).

Again, as with the similarity of the marks factor, the products appear identical to the consuming public—an unaltered TracFone/Nokia prepaid phone looks identical to an altered TracFone/Nokia prepaid phone.

While the Defendants change the functionality of the TracFone/Nokia prepaid phones by hacking into them and unlocking them so they can work on other networks, this change in functionality does not make the altered phones appear in any way dissimilar to unaltered TracFone/Nokia prepaid phones.  The test is not whether the goods can be distinguished, but whether they "are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods."  *Id.*  Just as the Eleventh Circuit held in *E. Remy Martin* that wine and brandy were not dissimilar and in *Frehling Enterprises, Inc.* that furniture made of different materials was not dissimilar, the wireless handsets at issue here are not dissimilar.  *See Frehling Enters., Inc.*, 192 F.3d at 1338 (discussing *E. Remy Martin & Co*, 756 F.2d at 1530, and applying that decision's rationale).  The altered TracFone/Nokia prepaid phones are identical in appearance to genuine TracFone/Nokia prepaid phones and, as a result, consumers are very likely to consider TracFone as the source of the unlocked post-paid handsets.

### 4.  *Similarity of the Parties' Retail Outlets and Customers*

"This factor takes into consideration where, how, and to whom the parties' products are sold."  *Frehling Enters., Inc.*, 192 F.3d at 1339.  Although, as far as TracFone is currently aware, Defendants do not sell the altered TracFone/Nokia prepaid phones out of retail establishments

other than their own storefront/warehouse and over the internet, they target the same consumer base as TracFone—consumers looking for affordable, high quality wireless telephones.

     5. *Similarity of Advertising Media*

"This factor looks to each party's method of advertising." *Id.* Although TracFone's advertising is much more extensive than Defendants', there is some overlap in that both use internet.

     6. *Defendants' Intent*

This factor looks to whether "a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Id.* at 1340. Likelihood of confusion can be demonstrated as a matter of law if this factor is present. *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994); *Frehling Enters., Inc.*, 192 F.3d at 1340.

Defendants' sale of altered TracFone/Nokia prepaid phones with the prevalent TracFone mark intact clearly indicates that they improperly intended to derive a benefit from TracFone's business reputation as a leading provider of wireless telephone service.

     7. *Actual Confusion*

Evidence of actual confusion is not a prerequisite to a finding of a likelihood of confusion. *Babbit Electronics, Inc.*, 38 F.3d at 1179 n.4. "[T]hus it is up to individual courts to assess this factor in light of the particular facts of each case." *Frehling Enters., Inc.*, 192 F.3d at 1340.

Because TracFone was only recently made aware of Defendants' illegal activities and has moved so rapidly to stem the losses that Defendants have caused, TracFone has not yet identified individual customers who were confused by Defendants' illegal use of the TracFone mark. However, the degree to which the other factors favor TracFone demonstrate that there is a

substantial likelihood of confusion.  *See, e.g.*, *Int'l Cosmetics Exch., Inc.*, 303 F.3d at 1248-49 (holding that concurrent use of same mark on similar product was sufficient to demonstrate a likelihood of confusion); *Babbit Electronics, Inc.*, 38 F.3d at 1179-80 (finding a likelihood of confusion despite a lack of evidence of actual confusion).

### b.  Defendants violated 15 U.S.C. § 1125(a).

Section 43(a) of the Lanham Act makes it unlawful for any person "who, on or in connection with any goods or services . . . uses in commerce any word, . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person."  15 U.S.C. § 1125(a).

As the statutory text indicates, the analysis of Defendants' violation of § 1125(a) through unfair competition is essentially the same as the analysis of Defendants' violation of § 1114(1). *See Babbit Electronics, Inc.*, 38 F.3d at 1181; *see also Planetary Motion, Inc. v. Techsplosion Inc.*, 261 F.3d 1188, 1193, 1200 n.22 (11th Cir. 2001) (recounting the elements of a § 1125(a) violation).  Therefore, because TracFone has demonstrated a substantial likelihood of success with regard to its claim that Defendants have violated § 1114(1), it has also demonstrated a likelihood of success with regard to its claim that have Defendants violated § 1125(a).  *Babbit Electronics, Inc.*, 38 F.3d at 1181.

### 2.  <u>The Florida Anti-Dilution Statute.</u>

Florida's Anti-Dilution Statute, § 495.151, Fla. Stat., "explicitly provides for a court's imposition of injunctive relief upon a showing that there exists a likelihood (1) of injury to a plaintiff's business reputation or (2) of dilution of the distinctive quality of the mark." *Laboratorios Roldan*, 902 F. Supp. at 1569; *see also Great S. Bank v. First S. Bank*, 625 So. 2d

463, 470 (Fla. 1993).  There are, therefore, two distinct grounds for relief under § 495.151, and the requirements for both are satisfied in this case.  *Id.*; *see also Sakura Japanese Steakhouse Inc. v. Lin Yan, Inc.*, 827 So. 2d 1105, 1107 (Fla. 2d DCA 2002).  The statute provides relief regardless of whether there is competition between the parties or confusion as to the source of the product.  § 495.151, Fla. Stat.; *Perez*, 97 F. Supp. 2d at 1161.

For relief pursuant to the first ground under § 495.151, injury to plaintiff's business reputation, the plaintiff can show, among other things, that its business reputation has been tarnished.  *Lin Yan, Inc.*, 827 So. 2d at 1107.  Defendants' unauthorized use of the TracFone mark on wireless phones that no longer meet TracFone's stringent specifications will undoubtedly tarnish TracFone's reputation among consumer and in the business community.  The reputation for quality that TracFone has worked so hard to build will be marred by inferior products bearing the TracFone mark being spread throughout the marketplace.

A plaintiff can also demonstrate a violation of § 495.151 by showing that the distinctive quality of its mark has been diluted.  A plaintiff does so by showing that the defendant used "a designation which resembles the *highly distinctive* trade name of another in a manner likely to cause a reduction in the distinctiveness of the other's trade name."  *Lin Yan, Inc.*, 827 So. 2d at 1107.  A plaintiff, therefore, must establish first that the mark is highly distinctive and second that the defendant's use is likely to cause a reduction in that mark's distinctiveness.  Both requirements are easily satisfied here.

<u>The TracFone Mark is Highly Distinctive</u>

"A number of factors are relevant to whether a mark has acquired sufficient distinctiveness to be protected from dilution, including the inherent distinctiveness and

uniqueness of the mark, the duration and extent of its use, the duration and extent of advertising that emphasizes the mark, and the degree of recognition by prospective purchasers.  Third party use[] of the mark either as a trade symbol or in other contexts also is an important factor in assessing distinctiveness." *Great S. Bank*, 625 So. 2d at 470.

Similar to the "type of mark" analysis under the Lanham Act, the inherent distinctiveness and uniqueness of the mark is determined by the category that mark falls into, be it "1) fanciful or coined; 2) arbitrary; 3) suggestive; 4) descriptive; [or] 5) generic." *Lin Yan, Inc.*, 827 So. 2d at 1107 n.2 (quotation omitted).  As described *supra* in Part II.A.1.a.1 (pp. 8-9), the TracFone mark is certainly arbitrary, if not "fanciful or coined."

As for duration and extent of use, the TracFone mark has been in use since 1996 and can be seen in major retail stores such as Wal-Mart, Target, and Sam's Club throughout the United States.  (Savedge Decl. ¶ 27)  TracFone also has a website where its mark is prominently displayed throughout the site.  (*Id.*)  *See http://www.TracFone.com*.  Furthermore, the TracFone mark is recognized as incontestable by the United States Patent and Trademark Office.  (Exs. C & D)

As for duration and extent of advertising, TracFone spends millions of dollars each year in marketing TracFone products.  (Savedge Decl. ¶ 28)  TracFone continuously advertises products with the TracFone mark in nationwide marketing campaigns.  (*Id.*)  As a leader in prepaid wireless communications, the TracFone name is synonymous with providing quality products and service.  (*Id.*)  Prospective purchasers know the TracFone mark and look to TracFone products for high quality wireless phones at affordable prices.  (*Id.*)

Finally, no third party is authorized to use the TracFone mark—only TracFone and its affiliated sales agents use the TracFone mark.  (Savedge Decl. ¶ 26)  Thus, all the relevant

factors demonstrate that the TracFone mark is highly distinctive and is entitled to substantial protection from dilution pursuant to § 495.151, Fla. Stat.

<u>Defendants' Use of the TracFone Mark is Likely to Reduce its the Distinctiveness</u>

The next step in the § 495.151 analysis is to determine whether the defendants' use of the mark is likely to reduce the distinctiveness of the mark.  "If the plaintiff holds a distinctive trademark, it is enough that the defendant has made significant use of a very similar mark." *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985); *see also Glen Raven Mills, Inc. v. Ramada Int'l, Inc.*, 852 F. Supp. 1544, 1557 (M.D. Fla. 1994) (quoting *Way*, 757 F.2d at 1186).

As demonstrated in the previous subsection, the TracFone mark is distinctive. Furthermore, Defendants have made significant use of the TracFone mark through the sale of altered TracFone/Nokia prepaid phones.  After removing the TracFone Prepaid Software from the TracFone/Nokia prepaid phones, Defendants resell the altered phones as new.  (Savedge Decl. ¶¶ 24, 25; Bernal Decl. ¶ 17)  The altered phones, while no longer conforming to TracFone's specifications and no longer operative on the TracFone prepaid wireless system, still contain the original TracFone mark on handset.  (Savedge Decl. ¶ 24)  Because the TracFone mark is displayed on the front and back of the altered wireless phones, consumers are likely to attribute any malfunctions and reduction in the quality of the wireless phone to TracFone.  The result is that dissatisfied customers' estimation of the quality of the TracFone (and Nokia) mark will be diminished.

As stated by this Court in *Laboratorios Roldan*, "'[t]here is no doubt that the commercial value of the plaintiff's trade name and service mark is likely to be diluted by defendant's

unauthorized use of a virtually identical trade name and service mark, and that this will create a likelihood of injury to plaintiff's business reputation.'"  902 F. Supp. at 1569 (quoting *Am. United Life Ins. Co. v. Am. United Ins. Co.*, 731 F. Supp. 480, 487 (S.D. Fla. 1990)); *see also Babbit Electronics, Inc.*, 38 F.3d at 1182 (recognizing a strong likelihood of dilution where purchasers may associate the plaintiff's brand of telephone with the defendant's similar telephone).

In sum, TracFone has demonstrated a substantial likelihood of success pursuant to either theory of liability available under § 495.151, Fla. Stat.

### 3.   The FDUTPA.

The Florida Deceptive and Unfair Trade Practices Act declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  § 501.204(1), Fla. Stat.  According to federal decisions[3], "a deceptive practice is one that is 'likely to mislead' consumers."  *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000); *see also Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990) (holding that the plaintiff properly stated a claim for injunctive relief pursuant to the FDUTPA where the plaintiff alleged that the defendant's publication of essays under a trade name belonging to plaintiff "created deception, confusion, and mistake on the part of the public").

As demonstrated above, there is a substantial likelihood that consumers will confuse the wireless phones sold by Defendants with genuine TracFone wireless phones.  By continuing to

---

[3]  Section 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1)."  Section 501.204(1) is Florida's state law counterpart to 15 U.S.C. § 45(a)(1).

sell altered TracFone/Nokia phones with the TracFone mark, Defendants are misleading consumers and creating deception, confusion, and mistake on the part of the public with regard to the product being purchased.  *See, e.g.*, *Laboratorios Roldan*, 902 F. Supp. at 1569-70 (holding that the defendants' attempts at passing off their products as those of the plaintiff violated § 501.204(1)).  Defendants' misconduct entitles TracFone to relief under the FDUTPA, and TracFone has a clear likelihood on success on its FDUTPA claims.

### 4.   The DMCA.

Defendants have violated at least two provisions of the Digital Millennium Copyright Act by circumventing technological measures, in violation of 17 U.S.C. § 1201(a)(1), and trafficking in services used to circumvent technological protection measures, in violation of 17 U.S.C. § 1201(a)(2).  Defendants, in essence, have been caught red handed; TracFone/Nokia prepaid phones were initially purchased by Defendants with the TracFone Prepaid Software and the security measures in place, and the very same phones were later sold by Defendants with the TracFone Prepaid Software erased or disabled and the security broken.

#### a.   Defendants violated 17 U.S.C. § 1201(a)(1).

Defendants violated § 1201(a)(1) by circumventing the security features contained in the TracFone/Nokia prepaid phones that protect TracFone's proprietary prepaid software.  This section provides in relevant part that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  17 U.S.C. § 1201(a)(1)(A).  For purposes of this provision, to "circumvent a technical measure" is "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."   17 U.S.C. § 1201(a)(3)(A).  Also under this provision, a technological measure "effectively controls access

to a work" if the measure, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).

Here, the TracFone/Nokia prepaid phones contain security features that prevent unauthorized access into the TracFone Prepaid Software. (Savedge Decl. ¶ 11) Without those security features, the code that comprises the TracFone Prepaid Software could be accessed by anyone who desires to do so. (*Id.*) In other words, security measures within the TracFone/Nokia prepaid phones prevent the TracFone Prepaid Software from being viewed, copied, altered, or otherwise manipulated by unauthorized personnel. (*Id.*) These security features, therefore, are technological measures that "effectively control[] access to" TracFone's proprietary prepaid software within the meaning of the DMCA. The Defendants, moreover, have bypassed, removed, deactivated, or impaired that protection by disabling or erasing the TracFone Prepaid Software on the previously secured TracFone/Nokia prepaid phones. (Savedge Decl. ¶ 24)

### b.  Defendants violated 17 U.S.C. § 1201(a)(2).

In addition to making it unlawful to circumvent security technology, Congress also made it unlawful to offer or otherwise traffic in the circumvention of security technology:

No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that –

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; . . .

. . . .

17 U.S.C. § 1201(a)(2).[4]

In reselling altered TracFone/Nokia prepaid phones, Defendants are selling both the altered TracFone prepaid wireless phone and the service of circumventing the technological measures that protect the TracFone Prepaid Software from alteration or modification. Defendants sell the altered TracFone/Nokia prepaid phones at a price substantially higher than the price at which consumers could purchase the unaltered phones themselves at retail stores throughout the country. The additional premium charged by Defendants is for the service they perform in unlawfully altering the TracFone Prepaid Software. Thus, by selling altered TracFone/Nokia prepaid phones, Defendants have trafficked in and continue to traffic in the service of circumventing TracFone's technological measures that effectively control access to TracFone's proprietary software. The service of altering the TracFone Prepaid Software contained in TracFone/Nokia prepaid phones is primarily designed or produced for the purpose of circumventing TracFone's technological measures that effectively control access to TracFone's proprietary software. Accordingly, Defendants have violated and continue to violate section 1201(a)(2)(A) of the DMCA.

Furthermore, the service of altering the TracFone Prepaid Software has, at most, only a limited commercially significant purpose or use other than circumventing TracFone's technological measures that effectively control access to TracFone's proprietary software. Defendants, therefore, have also violated and continue to violate § 1201(a)(2)(B) of the DMCA, and TracFone will likely prevail on its DMCA claim.

---

[4] The definitions of "circumvent a technological measure" and "effectively controls access to a work" are the same for this section as they are for § 1201(a)(1)(A). See 17 U.S.C. §§ 1201(a)(3)(A),(B).

B.   IRREPARABLE INJURY.

The injuries suffered by TracFone as a result of Defendants' misconduct cannot be completely remedied by an award of damages.  As for TracFone's claims based on Defendants' trademark infringement, "[t]he law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of Civil Procedure 65."  *BellSouth Adver. & Publ'g Corp v. Real Color Pages, Inc.*, 792 F. Supp. 775, 784 (M.D. Fla. 1991); *see also E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 & n.14 (11th Cir. 1985) ("a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm"); *Laboratorios Roldan*, 902 F. Supp. at 1570-71 ("Likelihood of confusion constitutes irreparable injury."); *Burger King Corp. v. Lee*, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991) ("The existence of a likelihood of confusion constitutes irreparable injury as a matter of law sufficient to satisfy the requirements of Fed. R. Civ. P. 65."); *Sundor Brands, Inc. v. Borden, Inc.*, 653 F. Supp. 86, 93 (M.D. Fla. 1986). Furthermore, "a plaintiff suffers irreparable injury due to the loss of control over products bearing its trademark or trade dress." *Laboratorios Roldan*, 902 F. Supp. at 1571.

TracFone has demonstrated above that there is a substantial likelihood of confusion between legitimate TracFone/Nokia prepaid phones and the unlawfully altered phones sold by Defendants.  As a result, it follows that TracFone has established that the threatened injury is irreparable.  *E. Remy Martin & Co.*, 756 F.2d at 1534 (holding that, because there was a likelihood of confusion and a substantial likelihood of prevailing on the merits, the requirement of a threat of irreparable injury was also satisfied); *Burger King Corp.*, 766 F. Supp. at 1157 ("Because we have found that BKC is likely to prevail on the merits of its trademark

infringement claim by establishing a likelihood of confusion, it follows that BKC has established that the injury it faces is of an irreparable nature.").

In addition, Defendants' actions, if allowed to persist, will continue to cause TracFone to suffer harm to its business reputation and dilution of its distinctive TracFone mark as Defendants introduce more and more unlawfully altered phones into the marketplace. *Laboratorios Roldan*, 902 F. Supp. at 1571; *cf. Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) (recognizing that the continued sale of counterfeit jeans would damage the plaintiff's business reputation and decrease its legitimate sales and holding that "such trademark infringement 'by its nature causes irreparable harm'" (quoting *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989))).

With respect to Defendants' violation of the DMCA, the infringement of a copyright presumptively constitutes irreparable harm. *See, e.g.*, *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132, 138 (D. D.C. 1984) ("A copyright holder may be presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded."); *see also Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp.2d 211, 215 (S.D.N.Y. 2000) (finding that a violation of § 1201 gives rise to a presumption of irreparable harm just as a direct copyright violation does).

In addition to this presumed irreparable harm, the actual irreparable harm that TracFone has suffered, although quite serious now, will worsen over time if Defendants are not stopped by the Court. Pirated software and illegal hacking tools can easily be copied and transmitted to other infringers throughout the world in seconds. If not stopped quickly, an isolated instance can easily explode into an epidemic of piracy and illegal hacking. Moreover, as Defendants continue to traffic in altered TracFone/Nokia prepaid phones, an ever-increasing number of infringing and

illegal handsets will exist in the marketplace.  These altered TracFone/Nokia prepaid phones will become scattered throughout the country and TracFone will be unable to retrieve all of these altered handset units, thus causing TracFone further irreparable harm.  *See CSC Holdings, Inc. v. Greenleaf Elecs., Inc.*, 2000 WL 715601, at *6 (N.D. Ill. June 2, 2000) (finding that the practical inability of the plaintiff to detect and to eliminate the pirated devices violating § 1201 contributed to a finding of irreparable harm).  Additionally, when these altered TracFone/Nokia prepaid phones malfunction due to Defendants' erasure or disabling of the TracFone Prepaid Software, consumers will devalue TracFone products.  *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp.2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and therefore is an appropriate basis for injunctive relief.").

### C.   BALANCE OF HARDSHIPS.

Defendants have no legitimate interest in selling wireless phones with the TracFone mark when, in fact, those phones are not genuine TracFone wireless phones.  *See Laboratorios Roldan*, 902 F. Supp. at 1571 (finding no legitimate interest in the defendants' continued use of products with a trade mark and trade dress that was similar to that already actively used by the plaintiffs).  Furthermore, it is unlikely that Defendants' business is maintained solely through the sale of altered TracFone/Nokia prepaid phones—the injunctive relief requested by TracFone targets only Defendants' activities with regard to TracFone/Nokia prepaid phones.[5]

---

[5]  At this point, TracFone is only aware of Defendants' illegal activities with regard to its TracFone/Nokia prepaid phones.  TracFone will, of course, amend its pleadings to include claims related to other TracFone phones if discovery reveals that Defendants' are hacking into and unlocking TracFone handsets other than those manufactured for TracFone by Nokia.

TracFone, on the other hand, is threatened with significant irreparable injury if a preliminary injunction is not issued.  The continued sale of altered phones that contain the TracFone mark, but no longer conform to TracFone's specifications and no longer operate on the TracFone system, poses a substantial threat to TracFone's business reputation.  If permitted to proceed unchecked, Defendants' misconduct could also pose a substantial threat to TracFone's continued viability.  Defendants' actions threaten to irreparably damage TracFone's hard-earned business reputation as a provider of quality wireless service.

Furthermore, with respect to the DMCA violation, the monetary benefits that Defendants receive from their actions are not benefits to be protected from injury.  *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132, 138 (D.D.C. 1984) (citing *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 145-55 (D. N.J. 1982)); *see also CSC Holdings*, 2000 WL 715601, at *7 (finding that violations of federal law including § 1201 were "not worthy of any protection").  Under these circumstances, the "issuance of a preliminary injunction will merely enjoin Defendants from conducting a business which is already prohibited by state and federal law." *MediaOne of Delaware, Inc. v. E&A Beepers & Cellulars*, 43 F. Supp. 2d 1348, 1354 (S.D. Fla. 1998).

### D.   PUBLIC INTEREST.

As this Court stated in *Laboratorios Roldan*:

> The public is entitled to be free from deception and confusion.  In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount.  Injunctive relief will serve the public interest by immediately stopping Defendants' deception of consumers.

902 F. Supp. at 1571 (quotation and citations omitted); *see also BellSouth Adver. & Publ'g Corp*, 792 F. Supp. at 785.

In this case, not only will there be no harm to the public by the issuance of the preliminary injunction, but the public interest will be served because an injunction would immediately prevent confusion due to the Defendants' sale of altered TracFone/Nokia prepaid phones. *See id.*

A similar result follows under the DMCA as the public interest lies with the protection of intellectual property. *See WPOW*, 584 F. Supp. at 138; *CSC Holdings*, 2000 WL 715601, at *7 (finding that an injunction was in the public interest because it promoted the enforcement of federal laws and supported the protection of intellectual property rights). There is no public interest in the use or sale of technology that violates the DMCA. Accordingly, the public interest will be served by issuing the requested injunctive relief.

WHEREFORE, for the foregoing reasons, TracFone respectfully requests that this Court issue an order enjoining Defendants, and each of their officers, directors, employees, agents, representatives, and all others acting in concert with them, from, during the pendency of this action:

(1) accessing, altering, erasing, or disabling TracFone's Prepaid Software contained within TracFone/Nokia prepaid phones,

(2) selling or offering for sale TracFone/Nokia prepaid phones whose TracFone Prepaid Software has been altered, erased, or disabled, and

(3) advertising products or services related to altered TracFone/Nokia prepaid phones; and grant such other and further relief as is just and appropriate.

Respectfully submitted this 13th day of January, 2006.

<div style="margin-left: 40%;">

**/s/ James B. Baldinger**
Steven J. Brodie
Florida Bar Number 333069
James B. Baldinger
Florida Bar Number 869899
CARLTON FIELDS, P.A.
P.O. Box 150
West Palm Beach, FL 33402-0150
Telephone:  561.659.7070
Facsimile:  561.659.7368

*Attorneys for TracFone Wireless, Inc.*

</div>

<div style="text-align: center;">

**<u>CERTIFICATE OF SERVICE</u>**

</div>

I certify that a copy of the foregoing has been furnished by U.S. Mail to:  Sol Wireless Group, Inc., 222 Zamora Avenue, #5, Coral Gables, FL 33134, Attn:  Carlos R. Pino, Registered Agent, Carlos R. Pino, 222 Zamora Avenue, #5, Coral Gables, FL 33134, Jorge Romero, 9703 SW 142nd Court, Miami, FL 33186, on January 13th, 2006.

<div style="margin-left: 40%;">

**/s/ James B. Baldinger**
<div style="text-align: center;">Attorney</div>

</div>

Int. Cls.: 9, 38, and 42

Prior U.S. Cls.: 21, 23, 26, 36, 38, 100, 101, and 104

Reg. No. 2,114,692

## United States Patent and Trademark Office

Registered Nov 18, 1997

### TRADEMARK
### SERVICE MARK
### PRINCIPAL REGISTER

## TRACFONE

TOPP, INC (FLORIDA CORPORATION)
8280 N W 27TH STREET
SUITE 506
MIAMI, FL 33122

FOR ELECTRONIC COMMUNICATIONS EQUIPMENT, NAMELY, CELLULAR TELE-PHONES, PREPAID AIRTIME CELLULAR TELEPHONES AND CELLULAR TELEPHONE ACCESSORIES, NAMELY, PREPAID AIRTIME DEBIT CARDS, BATTERY CHARGERS, STANDS, ANTENNAE, VOICE AMPLIFIERS AND MICROPHONES, COMPUTER PRO-GRAMS FOR USE IN CONTROLLING AND MONITORING PREPAID AIRTIME CELLULAR TELEPHONE SERVICE, IN CLASS 9 (U S CLS 21, 23, 26, 36 AND 38)

FIRST USE 6–30–1996, IN COMMERCE 6–30–1996

FOR PROVIDING CELLULAR TELEPHONE SERVICES AND PROVIDING MONITORING AND CONTROL SERVICES FOR USE IN CON-JUNCTION WITH PREPAID AIRTIME CELLU-LAR PHONES AND DEBIT CARDS, IN CLASS 38 (U S CLS 100, 101 AND 104)

FIRST USE 6–30–1996, IN COMMERCE 6–30–1996

FOR WHOLESALE DISTRIBUTORSHIP FEATURING OF CELLULAR TELEPHONES, PREPAID AIRTIME CELLULAR TELEPHONES AND PREPAID AIRTIME DEBIT CARDS, AND SOFTWARE FOR CONTROLLING AND MONI-TORING PREPAID AIRTIME CELLULAR SERVICE, IN CLASS 42 (U S CLS 100 AND 101)

FIRST USE 6–30–1996, IN COMMERCE 6–30–1996

SN 75–074,390, FILED 3–18–1996

DAVID NICHOLSON, EXAMINING ATTOR NEY



EXHIBIT
A

**Int. Cls.: 9, 35 and 38**

**Prior U.S. Cls.: 21, 23, 26, 36, 38, 100, 101, 102 and 104**

## United States Patent and Trademark Office

**Reg. No. 2,761,017**
Registered Sep. 9, 2003

**TRADEMARK**
**SERVICE MARK**
**PRINCIPAL REGISTER**



TRACFONE WIRELESS, INC (FLORIDA COR-
PORATION)
8390 NW 25TH STREET
MIAMI, FL 33122

FOR ELECTRONIC COMMUNICATIONS EQUIP-
MENT, NAMELY, CELLULAR TELEPHONES, PRE-
PAID AIR TIME CELLULAR TELEPHONES,
CELLULAR TELEPHONE ACCESSORIES, NAME-
LY, BATTERY CHARGERS, STANDS, ANTENNAE,
HEADSET KITS COMPRISED OF HANDS FREE
ELECTRONIC EARPIECE WITH MICROPHONE
AND HOLSTER, HANDS FREE HEADSETS, CASES
WITH FLAPS, POWER ADAPTERS, BATTERIES,
CARRY SLEEVES, FACE PLATES, BELT CLIPS,
HOLSTERS, MOUNTING ATTACHMENTS, IN
CLASS 9 (U S CLS 21, 23, 26, 36 AND 38)

FIRST USE 12-0-2000, IN COMMERCE 12-0-2000

FOR ON-LINE RETAIL STORE SERVICES FEA-
TURING CELLULAR TELEPHONES, PRE-PAID

WIRELESS AIR TIME CARDS, CELLULAR TELE-
PHONE ACCESSORIES AND WIRELESS SERVICES,
IN CLASS 35 (U S CLS 100, 101 AND 102)

FIRST USE 12-0-2000, IN COMMERCE 12-0-2000

FOR PROVIDING CELLULAR TELEPHONE
SERVICES AND PROVIDING MONITORING AND
CONTROL SERVICES FOR USE IN CONJUNCTION
WITH PREPAID AIR TIME CELLULAR PHONES
AND DEBIT CARDS, IN CLASS 38 (U S CLS 100, 101
AND 104)

FIRST USE 12-0-2000, IN COMMERCE 12-0-2000

OWNER OF U S REG NO 2,114,692

SER NO 76-396,136, FILED 4-15-2002

CATHERINE FAINT, EXAMINING ATTORNEY



EXHIBIT
B